**SO ORDERED.**

**DONE and SIGNED October 4, 2016.**



_____

**JEFFREY P. NORMAN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| Billy Ray Parker | § | 11-10786 |
| | § | Chapter 13 |
| | § | |
| Karen W. Gobert | § | 16-11147 |
| | § | Chapter 7 |
| | § | |
| Helen Marie While | § | 15-12283 |
| | § | Chapter 13 |

### MEMORANDUM OPINION AND REFERRAL FOR ATTORNEY DISCIPLINE

Before the Court are sixteen various show cause orders, a motion for sanctions, and

disgorgement orders concerning attorney Michael B. Rennix. These include the three above-

1

captioned cases,[1] as well as a miscellaneous proceeding (Case No. 16-00101) which involves four

show cause orders,[2] and nine other Chapter 7 cases in which the Court issued disgorgement orders.[3]

The Court held evidentiary hearings on all of these matters on September 26, 2016.   After

considering the pleadings, evidence, testimony, and argument of the parties, the Court makes the

following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52,

as incorporated by Federal Rules of Bankruptcy Procedure 7052 and 9014.2.   To the extent that

any finding of fact is construed as a conclusion of law, it is adopted as such. To the extent any

conclusion of law is construed as a finding of fact, it is adopted as such.   The Court reserves the

right to make any additional findings and conclusions as may be necessary or as requested by any

party.   The Court further reserves the right to supplement these findings.

## I. Procedural Background

### *Billy Ray Parker, Case No. 11-10786*

Billy Ray Parker filed a Chapter 13 bankruptcy case on March 31, 2011 (Case No. 11-

10786, ECF No. 1).   His Chapter 13 plan was confirmed on June 28, 2011 (ECF No. 30).   Both

the confirmed plan itself and the confirmation order provided that the "[d]ebtor shall remit to the

Chapter 13 Trustee 50% of the net recovery from all personal injury and litigious claims" as the

debtor had been involved in an automobile accident prior to the filing of his Chapter 13 case and

any potential recovery constituted property of the estate.   On March 3, 2013, the debtor filed an

Application to Approve Compromise (Case No. 11-10786, ECF No. 44), in order to obtain court

---

[1] *See In re Parker,* Case No. 11-10786, ECF No. 67; *In re Gobert*, Case No. 16-11147, ECF No. 9; *In re White*, Case No. 15-12283, ECF No. 44.
[2] *See In re Rennix*, Case No. 16-00101, ECF Nos. 3, 4, 8, and 10.
[3] *See In re Westerbrook*, Case No. 16-10932, ECF No. 25; *In re Branch*, Case No. 16-10954, ECF No. 19; *In re Booth*, Case No. 16-10955, ECF No. 14; *In re Smith*, Case No. 16-10970, ECF No. 19; *In re Miller*, Case No. 16-11005, ECF No. 27; *In re Night*, Case No. 16-11077, ECF No. 21; *In re Houston*, Case No. 16-11090, ECF No. 15; *In re Goodwin*, Case No. 16-11204, ECF No. 16; *In re Allen*, Case No. 16-11403, ECF No 12.

approval of the settlement of that automobile accident claim.  The debtor had settled the claim for $77,500.00.  On April 8, 2013, the Court approved the proposed settlement (Case No. 11-10786, ECF No. 47).  Under the terms of the approved settlement, attorney fees, fees for costs of litigation, and medical expenses were approved in the amount of $54,049.43.  Pursuant to the order approving the compromise and the confirmed plan, the balance of $23,450.57 was to be equally divided between the debtor and the Chapter 13 Trustee, who would disburse her portion to creditors pursuant to the confirmed plan.  Therefore, $11,725.29 should have been remitted to the Chapter 13 Trustee for distribution under the plan.  However, these funds were never remitted to the Trustee.

On April 18, 2016, the Chapter 13 Trustee filed a Motion to Dismiss (Case No. 11-10786, ECF No. 50) which alleged the following: "[u]pon review of the case, it was found that the Chapter 13 Trustee has not received the share of the net personal injury proceeds in the amount of $11,725.29 pursuant to the Court's order dated April 8, 2013."  The motion to dismiss was originally scheduled for a hearing on May 18, 2016, which was continued several times.  At each scheduled hearing, both debtor's counsel Michael B. Rennix and the Chapter 13 Trustee or an attorney representing the Trustee appeared.  On May 18, 2016, the hearing was continued to June 8, 2016, to determine what had happened to the missing settlement funds.  At the June 8 hearing, the parties informed the Court that the check had been sent to Mr. Rennix, but it was still unclear what ultimately happened to the funds.  The Court continued the matter to June 15, 2016, so the parties could continue to research what had happened to the missing funds.

On June 15, 2016, the Court held the continued hearing on the motion to dismiss.  The hearing transcript follows:

        THE COURT: Let's return to the Parker matter.
        MR. RENNIX: Yes, sir.

THE COURT: 11-10786.

MS. LEDBETTER: Linda Ledbetter for Lucy Sikes.

MR. RENNIX: Mike Rennix on behalf of the debtor, Your Honor.  Your Honor, in the past week I have done some research and gotten into this deeper, and I think I can represent, to the best of my knowledge, what the situation is. At the time that the money came in, I had an employee, a Cindy Cabrera, who worked for me for a very short time --

THE COURT: Let's do this. Since -- I have looked at the case multiple times but didn't look at it yet again.

MR. RENNIX: Okay.

THE COURT: Let's fix the time period. So --

MR. RENNIX: Yes, sir.

THE COURT: -- this is a case that was filed in 2011?

MR. RENNIX: '11, yes, sir.

THE COURT: There was an order entered approving a compromise, or was this one Judge Callaway's old orders where it was just an agreement to split 50/50 in the confirmation order?

MS. LEDBETTER: There was an actual order that directed the disbursement of the proceeds.

MR. RENNIX: Correct.

THE COURT: Okay. The order was when?

MS. LEDBETTER: That order was --

THE COURT: I'll pull up the document. Let me answer my own question. And I apologize for not being more prepared.

MR. RENNIX: That's okay.

MS. LEDBETTER: All right.

MR. RENNIX: April 8th of '13, perhaps? Docket 47; is that right?

MS. LEDBETTER: Yes.

THE COURT: Let me just look real quick --

MR. RENNIX: Yes, sir.

THE COURT: -- so it's front of me. So on 4/8/2013, at Docket Number 47, Judge Callaway signed an order approving the settlement; approving $54,049.43 for attorneys fees, cost of litigation, payment of medical bills, and other expenses.

MR. RENNIX: Yes, sir.

THE COURT: And that 23,450.57 shall be divided equally between the debtor and the Chapter 13 Trustee. Right? That's the order we're talking about?

MS. LEDBETTER: Yes, sir.

MR. RENNIX: I think so, Your Honor.

MS. LEDBETTER: That's correct.

THE COURT: Okay. And so, first of all, I'm assuming the 23,450.57, did that money flow through your trust account?

MR. RENNIX: No, sir. A half was sent directly --the debtor's portion was sent directly to him. And the other --

THE COURT: Half was sent directly to the debtor?

MR. RENNIX: Yes, sir.

THE COURT: And the other half was sent to you?

4

MR. RENNIX: Was sent to me, made out to me.

THE COURT: And do we have a copy of that check?

MR. RENNIX: The Trustee does. I don't have my copy with me.

MS. LEDBETTER: Yes, sir.

THE COURT: Can I see it?

MS. LEDBETTER: Yes, sir.

One moment, Your Honor. We have multiple copies.

THE COURT: So the check basically, for the record, is check number 59215. It's dated 4/29/2013.

MR. RENNIX: Uh-huh.

THE COURT: It's made payable to Mike Rennix, Esquire, 12,225.29. It's payable to you, addressed to you.

MR. RENNIX: Yes, sir.

THE COURT: And I can't read that address. Is it Dazell (phonetic)?

MR. RENNIX: Dalzell, where I was at the time. That was my office –

THE COURT: Okay. Shreveport, Louisiana, 71104. And then it's got a reference of Parker, Billy, bank lien and attorney's fees of 500 bucks.

MR. RENNIX: Yes, sir.

THE COURT: And the check looks like it was endorsed by you. And it doesn't show where it was deposited.

MR. RENNIX: No, sir. And at that point, my notes from my file show that it was endorsed as it is to be mailed to the Trustee.

THE COURT: So where did it go?

MR. RENNIX: That's our -- what we don't know. But what I do know is that it went through my office and eventually it did -- well, my understanding -- I suspect and highly suspect that Ms. Cabrera had something to do with it.

THE COURT: Do you think she may have stolen the money from you?

MR. RENNIX: Yes, sir. And -- well, let me tell what you think -- well, that's what I think.

And let me tell you kind of where I think we can go from here, is that we're looking for her. And in fact my paralegals -- both her brothers are police officers --

THE COURT: Uh-huh.

MR. RENNIX: -- and they're assisting us, but they have not had any luck so far.

THE COURT: So?

MR. RENNIX: But -- well, if I could finish, Your Honor? But nevertheless, it did go through my office and at the end of the day, with or without her, it's going to be my responsibility because it was entrusted to me and it didn't go to the right place.

THE COURT: And by the same token, this woman basically now is under my jurisdiction and she's absconded with estate funds?

MR. RENNIX: Well, if she can be found.

THE COURT: Well, it's my --

MR. RENNIX: Well, what I propose, Your Honor, is that -- like I said, it is my office's responsibility. I've made arrangements to be able to reimburse the Trustee. I'm --Ms. Cabrera --

5

THE COURT: I don't think that solves the problem, though, in my eyes. I mean, if someone took the money and they took it inappropriately, then they need to basically be held accountable for that.

MR. RENNIX: Well, we understand that. And that's kind of where the police officer comes involved, if she's found.

THE COURT: Well, I think that I can make things work a little bit faster and harder than you can because I can make a referral to the United States Trustee as well as the U.S. Attorney.

MR. RENNIX: Okay.

THE COURT: And, you know, they have, unfortunately at this point in time, if they really have taken the money, they've committed a bankruptcy crime. I don't know what the limitation period is, but probably until it was discovered. So there may be multiple things that we can do relative to the check. Let me do this. The Court will announce an intent to make a referral to the United States Trustee, as well as to U.S. Attorney relative to these funds. And I'm going to ask them both to contact you, Mr. Rennix, so you can provide whatever information you may have.

MR. RENNIX: *I will cooperate [emphasis supplied].*

THE COURT: I will provide them a copy of the check and an understanding of what we think has happened to that check, and that these funds basically are funds that belong to the Chapter 13 Trustee or funds that belong to the estate, and that under the statutes, as I understand them to be, anyone absconding those funds would be basically guilty of a bankruptcy crime. Given that attack, what does the trustee then want to see happen?

MS. LEDBETTER: Regarding the pending motion to dismiss, Your Honor, I would not seek to withdraw that today. We will wait on verification of those issues. I would like to continue it, though, out for some considerable time period so we can make some determination --

THE COURT: Well, and I think it needs to be continued, but I don't think for some considerable point of time. I mean, this is something that needs to be -- this is not a small sum of money, and it needs to be basically dealt with in a very, very expedited manner. And I'll express that

both to the U.S.T. as well as to the United States Attorney when I talk to them. Let's set this matter out about six weeks and see where it falls.

MS. LEDBETTER: July 20th is the date that I had noted. Would that be appropriate, Your Honor?

THE COURT: Let me just look real quick. I think that's a good date, but I'm just going to check to make sure.

MS. LEDBETTER: Okay.

THE COURT: Yeah. Let's continue the matter out to July 20, 2016 at 1:30. And then hopefully by then I will have something to report to you and you hopefully will have something to report to me.

MR. RENNIX: Yes, sir.

THE COURT: I'm assuming that you don't have any objections to me holding on to this check?

MS. LEDBETTER: I do not, Your Honor.

MR. RENNIX: No objection.

6

THE COURT: All right. Then I'm going to hold on to the check, make the referrals we discussed on the record, and I will see you he both back here on July 20th at 1:30.
MR. RENNIX: Yes, sir.
MS. LEDBETTER: Yes, sir.
THE COURT: Okay.
MR. RENNIX: Thank you, Judge.
THE COURT: Thank you so much.

Thereafter, the Chapter 13 Trustee engaged in discovery to determine the chain of possession of the missing estate funds.   The Trustee requested a Bankruptcy Rule 2004 examination of Mr. Rennix, as well as an order requiring Mr. Rennix to produce certain documents. Contrary to Mr. Rennix's assertions that he would cooperate, he failed to do so.  On July 27, 2016, the Trustee filed her first Motion to Compel (Case No. 11-10786, ECF No. 59).  That motion was granted on August 2, 2016 (Case No. 11-10786, ECF No. 65).  Mr. Rennix did not comply with the order and the Trustee filed a second Motion to Compel Attendance at 2004 Examination and for Productions of Documents. (Case No. 11-10786, ECF No. 73), which was granted on September 2, 2016 (Case No. 11-10786, ECF No. 82).  Mr. Rennix failed to comply with both orders to compel and the Trustee filed yet a third Motion to Compel Attendance at 2004 Examination and for Production of Documents (Case No. 11-10786, ECF No. 88), which was granted in part and denied in part (Case No. 11-10786, ECF No. 88).  However, Mr. Rennix again failed to fully comply.

The Chapter 13 Trustee filed a Motion for Sanctions (Case No. 11-10786, ECF No. 67), which was ultimately set for hearing on September 26, 2016.  Prior to that hearing, the Court became aware of other issues concerning Mr. Rennix, and it ultimately suspended him from practicing law in the Western District of Louisiana for 76 days.  These other matters are described below, but they all bear heavily on this Court's referral to the District Court for additional attorney discipline.

7

***Orlando D. Peyton, Case No. 16-10186***

On August 25, 2016, the Court entered an order in *In re Peyton* suspending Mr. Rennix from the practice of law in the Western District of Louisiana for a period of 76 days (ECF No. 49). The debtor in that case, Orlando D. Peyton, filed a Chapter 13 bankruptcy case on February 8, 2016.  His Chapter 13 plan was never confirmed.  On August 16, 2016, Mr. Rennix filed an Ex-Parte Motion to Dismiss Mr. Peyton's case (Case No. 16-10186, ECF No. 37).  However, that same day, the Court became aware that Mr. Rennix's law license had been suspended since June 3, 2016.  Accordingly, the Court entered the following order:

> This matter is before the Court on the debtor's Ex Parte Motion to Dismiss (Docket No. 37). This motion was filed by the debtor's counsel, Michael B. Rennix. It has come to the attention of the Court that, as of June 3, 2016, Mr. Rennix has been ineligible to practice law in the state of Louisiana due to noncompliance with applicable CLE requirements. The local rules of the U.S. District Court for the Western District of Louisiana govern who may practice in this Court. The relevant local rule is LR83.2.2, which states the following:
>
> > Any member of the Bar of the Supreme Court of Louisiana who is in Good Standing with that Court is eligible for admission to and practice before this Court. Should any member's status as being in Good Standing in Louisiana lapse at any date for any reason, then his/her right to practice in this Court shall be deemed lapsed as of the same date. However, any member whose status in Good Standing lapses for reasons other than disciplinary may, nonetheless, still apply for admission pro hac vice.
>
> Pursuant to this rule, Mr. Rennix has not been eligible to practice in this Court since June 3, 2016. Accordingly, in order to practice in this Court, Mr. Rennix must either show that he is once again in Good Standing with the Bar of the Supreme Court of Louisiana, or he must apply for admission pro hac vice in each matter he wishes to appear in. However, the Court cannot grant the instant motion as it was filed by an attorney who is not currently eligible to practice in this Court.
>
> THEREFORE, IT IS ORDERED that the Ex Parte Motion to Dismiss is denied.  (Case No. 16-10186, Docket No. 38).

Thereafter, the Court entered an order for Mr. Rennix to appear and show cause because he had continued to practice law for a period of 76 days during which his law license was suspended (Case No. 16-10186, ECF No. 39).  After the show cause hearing, this Court held the following:

> Mr. Rennix has continued to practice law in this Court since becoming ineligible on June 3, 2016. The Court finds his eligibility to practice law in Louisiana was restored on August 18, 2016, which was reflected on the State Bar of Louisiana's website on August 22, 2016. However, as recently as August 16, 2016, two days before his license was restored and five days prior to the instant show cause hearing, Mr. Rennix filed two additional bankruptcy cases (Case Nos.16-11403 and 16-11408). The Court also notes that Mr. Rennix has regularly appeared before this Court on a majority of its weekly dockets during the time he was ineligible to practice law. Records available from CM/ECF and introduced into evidence by the Chapter 13 Trustee indicate that Mr. Rennix filed 24 bankruptcy cases while he was ineligible to practice law. Rule 5.5(b)(2) of the Louisiana Rules of Professional Conduct states that a lawyer not admitted in this jurisdiction shall not "hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction."[4] The Court finds that Mr. Rennix violated this rule. Specifically, Mr. Rennix was aware that he was ineligible to practice in this Court, yet he continued to do so. Mr. Rennix's testimony that he was unaware of the suspension is not credible. Even if he was unaware that he was ineligible to practice, this is not a defense. Mr. Rennix failed to inform the Court, the Chapter 13 Trustee and, most importantly, his clients that he was ineligible to practice. His failure to disclose this information was willful and intentional.
>
> Additionally, on August 17, 2016, the Court held hearing on a plan modification in the Barbara Jean Alford case (Case No. 12-10049). This is a case in which Mr. Rennix represents the debtor, and in which he has specifically taken action during a time when he was ineligible to practice law. Mr. Rennix did not appear at that hearing, but the debtor did appear and testified. The Court asked Ms. Alford if Mr. Rennix had ever told her he was ineligible to practice law; she stated he had not. The Court also asked the Chapter 13 Trustee if Mr. Rennix had ever indicated to her that he was ineligible to practice, and she indicated he had not. The debtor also provided a copy of text messages she had exchanged with Mr. Rennix that day. The Court introduced those text messages into evidence and they are incorporated by reference. The text messages are important for two reasons. First, Mr. Rennix did not tell his client that he was ineligible to practice, even after the Court had brought that issue to his attention through its order in this case. Second, he specifically instructed the debtor not to attend the scheduled hearing, which advice she appropriately ignored. The Court finds his advice to his client to not attend a hearing

---

[4] The Court notes that the entire Louisiana Rules of Professional Conduct have been adopted by the U.S. District Court for the Western District of Louisiana via Local Rule LR83.2.4.

to be extremely concerning, and constitutes misconduct in and of itself. This evidence also severely impugns Mr. Rennix's credibility.

This Court is the sole determiner of the truth and veracity of Mr. Rennix's testimony, which the Court finds untruthful. In making this finding, the Court notes Mr. Rennix's failure to abide by prior court orders. On August 2, 2016, this Court ordered Mr. Rennix to appear at a Rule 2004 examination at the Chapter 13 Trustee's office on August 18, 2016 at 2:00 p.m. in a separate case (Billy Ray Parker, Case No. 11-10786, Docket No. 65). The Court notes that this order was entered after Mr. Rennix's failure to comply with a prior discovery request and his failure to appear for a Rule 2004 examination. That case involves the disappearance of $12,225.29 of Chapter 13 estate funds from Mr. Rennix's office for which there is potential criminal and civil liability. A check endorsed by Mr. Rennix and subsequently cashed was not turned over to the Chapter 13 Trustee as required by this Court's order (Docket #47). Pursuant to this Court's instructions, the Chapter 13 Trustee is conducting an investigation as to the missing estate funds, specifically as to who cashed the check. Mr. Rennix was ordered to appear at the 2004 examination to testify about the missing check and funds. His testimony is extremely important. Mr. Rennix represented to the Court at a prior hearing (see hearing transcript, docket #58) that these funds may have been stolen by one of his employees. Specifically, he has alleged that after he endorsed the check, it was stolen by a former employee named Cindy Cabrerra. At the show cause hearing in the instant case, the Court became aware for the first time that Mr. Rennix did not attend the Rule 2004 examination on August 18, 2016 as ordered. This was the second time Mr. Rennix had failed to appear for a scheduled Rule 2004 examination. Mr. Rennix's avoidance in giving testimony regarding the check, his endorsement thereof, and its disappearance violates this Court's order to appear and give testimony. Still further, he has offered no credible excuse for his non-attendance or sought relief from this Court in the form of a request for continuance or excusal from attendance. His non- cooperation and avoidance severely impugns his credibility and the Court finds all of his testimony not credible for the reasons so stated. (Case No. 16-10186, ECF No. 46).

Based on its findings, this Court suspended Mr. Rennix from the practice of law in the Western District of Louisiana for 76 days.  This equals the number of days he continued to practice in this Court while ineligible to practice law.  The Court stressed this punishment was appropriate because Mr. Rennix failed to give any notice of his ineligibility to practice law to this Court, the Chapter 13 Trustee, the United States Trustee, and his clients in violation of Rule 5.5(b)(2) of the Louisiana Rules of Professional Conduct and Local District Court Rule LR83.2.2.   Additionally, between the date of his suspension (June 3, 2016) and the date of his reinstatement (August 18,

2016), Mr. Rennix received payment for legal services for bankruptcy or debt relief which he was not legally entitled to receive.  Therefore, the Court ordered Mr. Rennix to disgorge all payments he received during the period his law license was suspended.   The Court then issued orders either suspending fee awards or ordering disgorgement of fees Mr. Rennix received while his law license was suspended.  Additionally, in order to ensure that these fees were actually returned, the Court ordered the Chapter 13 Trustee to suspend attorney fee disbursements to Mr. Rennix pending further orders of this Court.

***Rennix, et al, 16-00101***

Shortly after the aforementioned suspension order was entered, the Court began receiving correspondence from some of Mr. Rennix's clients.   The Court initiated a miscellaneous proceeding and each correspondence was docketed.  The first docketed letter stated the following:

> To Whom it May Concern:
> On June 5th, I scheduled an appointment with Michael Rennix Attorney, in order to file Chapter 7 or Chapter 13 Bankruptcy. My husband abandoned me on or around January 2015 and moved to Kansas. He took our only transportation and everything was in my name, so I was robbing Peter to pay Paul and took out way to many payday loans trying to stay afloat but I could no longer stay afloat because of garnishments beginning. My estranged husband voluntarily surrendered our car back to Chrysler Capital - they had to search for the vehicle for several months.
> Mr. Rennix explained that Chapter 7 would honestly be my only way of regaining ground.  He told me that since I was a referral from another client that he would complete my case for $1500.00.   I told him I did not know how I could pay that with the acting garnishments as I was about to lose my rent home due to not being able to pay my rent.
> I called my mom Andrea Mitchell in South Carolina to ask for help.  She wanted to speak with Michael himself, he explained to her that if she paid $750.00 he would file my case and stop all garnishments immediately and the other $750.00 could be paid once the garnishments were stopped.
> My mom then mailed me the check made payable to Michael Rennix in the amount of $750.00 on June 13th, 2016. I took him all the completed paperwork with all creditors owed and all documents completed and signed at the same time I gave him the check. I took the check to Michael Rennix on June 15th, 2016. (I emailed my payroll department to inform them on June l7th that I had filed for bankruptcy and that Mr. Rennix informed me that all paperwork would be completed and that

11

I should not have a garnishment on June 30, 2016).  He deposited the check on June 23rd, 2016,

June 30th, 2016 payday - garnishment came out of my check so I contacted Mr. Rennix, his phones were messed up because of the weather, so I went to his office. He stated his secretary had been in the hospital and that he personally would take care of my case. He did not know where she was at on my case but he would take it over. She had been in an accident.

July 15th, 2016 payday - garnishment came out of my check so I contacted Mr. Rennix. After leaving several voicemails I finally reached him. He told me he would call me back in five minutes. However, he never called me back. My landlord was angry at me and I explained to Mr. Rennix that I was about to lose my home and he told me not to worry that I would be getting all the money garnished returned to me.  I explained to him I had no groceries and was not able to make it with these garnishments and that was my reasoning for contacting him to begin with. I called him again, he apologized that his secretary had surgery and that he would find out where she was on my case.

July 16th, 2016 left several messages for Michael Rennix. He never called me back.

July 18th, 2016 voicemail paycheck loans on company phone - I recorded on my cell phone and took to his office because of the information left on the voicemail her telling me to jump off a bridge and that I had no brain. - Mr. Rennix had me sign paperwork that was supposed to be finishing up everything needed on my case.

July 19th, 2016 - Payroll sent me a copy of two more garnishments that had been received by them. I printed them out and took them to Mr. Rennix's office.  He told me to stop worrying that he would take care of this for me.

July 29th, 2016 -garnishment was taking out of my check - so I began calling Mr. Rennix Office. The voicemail was full all week. I drove by and there was a note on the door they were out sick.

August 8th, 2016 -finally reached Mr. Rennix. He explained that everyone in his office had a virus.  He would take care of my case and finish up personally himself. He told me that I did not owe him anymore money due to the amount that has been garnished, my case was paid in full.  Everyone in his office had been sick and that was the reason for his office being closed.

August 15th, 2016 - garnishment taken from my check - I began calling Mr. Rennix's office. He told me to let him check and he would get back to me. He never did.  Every time you call I got a voicemail.

August 18th, 2016 - reached Mr. Rennix. He assured me I would be getting all monies withheld back, I explained that I needed to know when because my landlord was tired of waiting on her money.  He said Soon very soon.

August 26th, 2016

I was served with papers for court in Princeton, LA being sued by Cash Cow - listed in my bankruptcy so I contacted Mr. Rennix's office – I spoke with him and he assured me not to worry that everything had been taken care of. He had me fax him those papers along with my check stubs showing the amounts that had been garnished. I called him back because he was supposed to call me back and did not. I spoke with his secretary and she assured me she would take care of it. His

12

secretary returned my call, I explained everything to her again, she told me she would take care of this and not to worry about the court date, that they handle this. August  27th, 2016, I began calling Mr. Rennix office to be sure that he took care of the court date for Cash Cow.  Their phones had been disconnected.

August 28th, 2016 I called again and same disconnected recording

August 29th, 2016 I called again and same disconnected recording

Aug 30th, 2016 - garnishment taking from my check - phone is still disconnected, I drove to his office to find a note on the door stating that Mr. Rennix had taken ill and they would return to the office on Thursday. No dates are on the notice.

Sept. 1st, 2016 - new notice on the door of Mr. Rennix's office with a phone number that we can call or text 318-607-0307. Goes directly to voice mail.  Unable to leave a voicemail at this time.

Sept 1st, 2016 Sent Text to the number on the door 318-607-0307 at 12:04 PM today see attached. As of 12:43 PM still have not received a text back nor a phone call.

***I am begging the Court for help as I have no where else to turn. I am going to be homeless, due to Mr. Rennix's negligence in handling my Chapter 7 but accepting my money. (emphasis supplied)*** I spoke to a Clerk of Court and he advised that I compose this letter and attach any and all documents. (Case No. 16-00101, ECF No. 1)

The Court received three additional letters from other clients (Case No. 16-00101, ECF Nos. 2, 5, and 9).  These letters all contained shocking allegations.  Show cause orders were entered for each letter and each came for hearing on September 26, 2016.  It was in this context that the *Parker* matter described above came for hearing on September 26, 2016.

### Karen W. Gobert, 16-11147

Karen W. Gobert filed a Chapter 7 bankruptcy case on August 8, 2016.  She was represented by Mr. Rennix.  The Court notes, however, that Mr. Rennix was inelibgle to practice law at the time the case was filed.  Like it did in all of the cases in which Mr. Rennix was listed as counsel of record, the Court entered an Order Regarding Suspension of Attorney Michael B. Rennix (Case No. 16-11147, ECF No. 8).  Shortly thereafter, the Court entered a disgorgement order (Case No. 16-11147, ECF No. 9) because Mr. Rennix had accepted funds from Ms. Gobert to represent her in a bankruptcy when he was not eligible to practice law.  The Court scheduled a

13

status conference for September 26, 2016, to determine whether Mr. Rennix had complied with this disgorgement order.  Ms. Gobert appeared at the scheduled hearing and testified.

### *Helen Marie White, 15-12283*

Helen Marie White filed a Chapter 13 bankruptcy case on January 16, 2015.  To date, her Chapter 13 plan has not been confirmed.  On June 22, 2016, the Court entered an order requiring Mr. Rennix to appear and show cause (Case No. 15-12283, ECF No. 44) based on allegations of attorney negligence and misconduct Ms. White had made at her confirmation hearing that same day.  Ms. White alleged the following: (1) Mr. Rennix may have been negligent in not timely filing a motion to approve a home loan modification, (2) Mr. Rennix may have been negligent in not timely filing a motion concerning the disposition of insurance proceeds from a vehicle accident involving the debtor, (3) Mr. Rennix may not have adequately communicated with her or responded to her questions and concerns during the pendency her case, and (4) Mr. Rennix may have filed an incorrect disclosure of attorney compensation pursuant to Bankruptcy Rule 2016(b).  Mr. Rennix filed a disclosure of attorney compensation (Case No. 15-12283, ECF No. 5, pg. 44 of 45), which indicates he did not receive any compensation from the debtor prior to the filing of the case.  However, based on her testimony and other evidence, it was apparent Ms. White had paid Mr. Rennix as much as $1,000 prior to the filing of her Chapter 13 case.

The Court held the show cause hearing on July 28, 2016, at which it required Mr. Rennix to present documents with wet (original) signatures to the Chapter 13 Trustee.  The Court required this as there was allegations that Mr. Rennix did not acquire or maintain documents with wet signatures as required by the administrative rules of the U.S. Bankruptcy Court for the Western District of Louisiana.  The Court continued the show cause hearing in order for Mr. Rennix to produce these documents.  After the continued show cause hearing on August 1, 2016, the Court

issued an interim order (Case No. 15-12283, ECF No. 52) finding Mr. Rennix had violated the Administrative Rules of the U.S. Bankruptcy Court for the Western District of Louisiana ("Administrative Rules").  Those rules require the attorney of record or the party filing any document in a bankruptcy case to maintain the original signed document for at least five years after the case is closed.  The Administrative Rules also required that, upon request, the original documents must be provided to other parties or the Court for review.  The Court found Mr. Rennix had repeatedly violated the Administrative Rules as he did not produce any original signed documents as ordered.  The Court ordered that Mr. Rennix's ability to file documents with electronic signatures should immediately cease until the Court held a final hearing on the show cause order.  The final hearing on that show cause order was September 26, 2016, which is the same date the other matters discussed came for hearing.  In fact, the White hearing occurred after several other hearings discussed elsewhere in this opinion in which Mr. Rennix's professionalism and conduct were seriously called into question.

## II. Findings of Fact

***Billy Ray Parker, 11-10786***

Three witnesses testified in the Parker case at the show cause hearing on September 26, 2016.  The first witness was Chelsea Grissom, who is the local branch operations manager of Midsouth Bank.  The Court finds Ms. Grissom to be a credible witness.  She authenticated a copy of a check (check number 59215) made payable to Mike Rennix, Esq. from Midsouth Bank in the amount of $12,225.29.  The Court had received a copy of this check at a previous hearing on the Chapter 13 Trustee's Motion to Dismiss.  Case No. 11-10786, Trustee Ex. 1, ECF No. 99-1, pg. 1 of 4.  Ms. Grissom testified that, according to MidSouth Bank's records, the check had been cashed on May 23, 2016, and deposited into an account at Bancorpsouth Bank.

At the hearing on the Trustee's motion to dismiss, which was held on June 15, 2016, Mr. Rennix admitted endorsing and receiving the aforementioned check.   The Court finds that Mr. Rennix received via U.S. mail the check drawn on McKernan Law Firm, PLLC's client trust account shortly after the check was written on April 29, 2013.  Mr. Rennix endorsed the check and deposited it into his personal bank account.  Therefore, he misappropriated these funds for his own personal use.  Mr. Rennix deposited the check into his person account on May 22, 2013, as indicated by the bank statement entered into evidence.  Case No. 11-10786, Trustee Ex. 7, ECF No. Ex. 99-18, pg. 20 of 30.   The Court finds the deposit of $12,632.29 shown on the bank statement includes check number 59215 drawn on MidSouth Bank for $12,225.29, plus additional funds held by Mr. Rennix.  The Court makes these findings based on clear and convincing evidence of the tracking of the settlement funds.

In making these factual findings, the Court specifically takes note of the following evidence:

1.  The exchange between the Court and Mr. Rennix at the hearing on the Chapter 13 Trustee's motion to dismiss where Mr. Rennix admitted receiving and endorsing the check:

THE COURT: So the check basically, for the record, is check number 59215. It's dated 4/29/2013.
MR. RENNIX: Uh-huh.
THE COURT: It's made payable to Mike Rennix, Esquire, 12,225.29. It's payable to you, addressed to you.
MR. RENNIX: Yes, sir.
THE COURT: And I can't read that address. Is it Dazell (phonetic)?
MR. RENNIX: Dalzell, where I was at the time. That was my office –
THE COURT: Okay. Shreveport, Louisiana, 71104. And then it's got a reference of Parker, Billy, bank lien and attorney's fees of 500 bucks.
MR. RENNIX: Yes, sir.
THE COURT: And the check looks like it was endorsed by you. And it doesn't show where it was deposited.
MR. RENNIX: *No, sir. And at that point, my notes from my file show that it was endorsed as it is to be mailed to the Trustee.*

16

2.  The copy of check number 59215, payable to Mike B. Rennix, Esq. for $12,225.29, and Mr. Rennix's endorsement of same.  Case No. 11-10786, Trustee Ex. 1, ECF No. 99-1, pg. 1. MidSouth Bank's records show a posting date for the check of May 23, 2016.  Trustee Ex. 1, pg. 3.  This is the day after Mr. Rennix's $12,632.29 deposit at Bancorpsouth Bank into his personal account.  Case No. 11-10786, Trustee's Ex. 7, ECF No. 99-18, pg. 20 of 30.

The second witness in the case was Ellen Keller, Chapter 13 Trustee Lucy Sikes' office manager.  Ms. Keller has been employed by the Chapter 13 Trustee for seven years.  The Court finds Ms. Keller to be a credible witness.  Ms. Keller had no knowledge of the facts surrounding the funds in the Parker case, but offered testimony concerning her knowledge of Mr. Rennix's financial situation.  She intimated that his financial condition was unstable during 2012 and 2013. This includes the period of time the misappropriation of the funds occurred.  During 2012 and 2013, the Chapter 13 Trustee's office received various federal tax liens filed against the Mr. Rennix's law firm.  Case No. 11-10786, Trustee Ex. 2, ECF No. 99-2.  These tax liens resulted in the Chapter 13 Trustee paying two checks to the Internal Revenue Service representing funds due to Mr. Rennix for legal fees he had earned and been awarded by this Court in Chapter 13 cases. The first check was for $10,276.13, and was paid to the Internal Revenue Service on January 7, 2013.  The second check was for $10,475.10, and was paid to the Internal Revenue Service on February 8, 2013.  The loss of these fees adversely affected Mr. Rennix's business cash flow during the few months before his misappropriation of the Parker check.   While such holding is not necessary given the other clear and convincing evidence tracing the misappropriated funds to Rennix's personal checking account, the Court finds that Mr. Rennix's poor financial condition gave him ample motive to misappropriate the Chapter 13 estate funds.  Mr. Rennix's response to these Internal Revenue Service levies was to simply stop filing all of his required federal tax

17

returns.  In fact, Mr. Rennix admitted he has not filed any required federal tax returns, including personal and business returns, in the last five years.

The final witness was Mr. Rennix himself.  The Court does not find Mr. Rennix to be a credible witness, and it invites a complete review of his testimony.  His testimony was extremely inconsistent with prior assertions he had made to this Court.  At the September 26, 2016, hearing, Mr. Rennix testified that he could no longer remember receiving the Parker check or endorsing it. In fact, he basically asserted he had lost all of his memory regarding any of the events surrounding the receipt and deposit of the Parker check.  He had previously asserted at the June 15, 2016, hearing on the Trustee's motion to dismiss that it was his belief that his former paralegal had stolen the funds.  He no longer makes this assertion.  Additionally, he has never filed a police report and he has produced no employee records.  It appears that Mr. Rennix's previous assertions and allegations of employee theft were pure fabrications.  Finally, at the September 26 hearing, Mr. Rennix provided no defense to this Court's findings.  Therefore, this Court finds that he misappropriated the estate funds for his own personal use.

The Court notes that Mr. Rennix's testimony did clarify some uncontested facts.  The Trustee entered into evidence all of Mr. Rennix's client trust account statements that he produced. Case No. 11-10786, Trustee Ex. 5, ECF No. 99-11.  Based on these records, and lack thereof, the Court finds Mr. Rennix did not maintain a client trust account from September 2013 until the date this Court suspended him from practice in the Western District of Louisiana.  Indeed, Mr. Rennix admitted this on direct examination.  The Court finds Mr. Rennix never maintained any client trust accounting, even when he did maintain a client trust account.  Beginning in September 2013, Mr. Rennix routinely deposited into his personal account funds that should have been deposited into his client trust account.  Although he was ordered to produce client trust bank account statements

18

for the period from 2011 to 2015, Mr. Rennix only produced incomplete client trust account bank statements, for 19 of the 60 months.  Additionally, for the 19 months that Mr. Rennix did produce client trust account bank statements he did not produce any client trust accounting.  Further, the records produced by Mr. Rennix indicate that he made numerous improper disbursements from his client trust account, including checks for payroll, to his ex-wife, for health insurance, and to his child's school.  The Court finds that Mr. Rennix's lack of a client trust account and lack of proper trust accounting do not comply with the Louisiana Rules of Professional Conduct Rule 1.15.

The Court also finds that Mr. Rennix failed to comply with any of the Court's orders compelling production in this case.  Trustee Exhibits 5, 6 and 7 show the bank statements Mr. Rennix failed to provide.  These include the trust account statements noted above, as well eleven missing business or personal accounts bank statements.

**Rennix, et al, Case No. 16-00101**

There were four show cause orders entered in Case No. 16-00101, which is the miscellaneous proceeding the Court initiated in response to several letters it had received.  The hearings on all of the show cause orders was held on September 26, 2016.  All of the hearings involved similar facts.  Mr. Rennix received funds from a potential client for the payment of attorney fees and court costs for the filing of a bankruptcy case, and in each case he took no action or provided no legal services.  Many of the payments were made to Mr. Rennix while his license to practice law had been suspended.  Additionally, at the time he obtained the funds, he did not maintain a client trust account.  Therefore, the funds were regularly deposited into his personal bank account.  Still further, Mr. Rennix never refunded any of these funds to his clients, even though he had done no work and could no longer assist them.  The Court was forced to specifically

order the disgorgement of these funds by September 30, 2016.  Case No. 16-00101, ECF Nos. 3, 4, 8, and 10.

***Karen W. Gobert, 16-11147***

Karen W. Gobert filed a Chapter 7 bankruptcy case on July 8, 2016.  On September 26, 2016, she appeared and gave testimony regarding her interactions with her attorney, Mr. Rennix. Her case is representative of the numerous lapses of professional conduct by Mr. Rennix in this and other cases.  Ms. Gobert was a credible witness.  Ms. Gobert retained Mr. Rennix on September 28, 2015.  She paid him $1,500.00 for the filing of a Chapter 7 bankruptcy case, which was over nine months before Mr. Rennix actually filed her Chapter 7 case.  Further, Mr. Rennix did not have a client trust account into which to deposit the funds she tendered to him.  Ms. Gobert completed her credit counseling class on October 14, 2015.  Credit counseling is a prerequisite to filing a consumer bankruptcy case.  On October 14, 2015, Ms. Gobert had completed and transmitted to Mr. Rennix all of the documents required to begin work on her case, yet Mr. Rennix took no action. A normal delay for filing a consumer bankruptcy Chapter 7 case, such as Ms. Gobert's, should be no more than two weeks.  The delay in Ms. Gobert's case was approximately nine months.

Ms. Gobert was clearly proactive.  She kept detailed records. She emailed and called Mr. Rennix on numerous occasions, but received no response.  Mr. Rennix finally generated a client representation letter on April 11, 2016, but only at his client's insistence.  However, he took no further action on Ms. Gobert's case until July 7-8, 2016, when he texted her a case number.

Unfortunately, Mr. Rennix's delay in filing the case raised several serious issues.  First, Mr. Rennix did not have a client trust account in which to deposit Ms. Gobert's retainer.  Second Mr. Rennix filed the case at a time when he was ineligible to practice law.  Third, he filed a

"skeleton petition"[5] of only eleven pages and forged the debtor's signature on those documents. The Court makes this finding as Ms. Gobert testified she never signed the petition.  Fourth, Ms. Gobert's credit counseling certificate, which was dated October 14, 2015, had expired.  Realizing the certificate had expired, Mr. Rennix fraudulently generated a new credit counseling certificate for the debtor dated July 8, 2016.  The Court makes this finding as Ms. Gobert testified that the only credit counseling class she had participated in was in October 2015.  Finally, Mr. Rennix forged a client contract and presented it to the Chapter 13 Trustee.  The Court makes this finding as Ms. Gobert testified she never signed or executed the contract that Mr. Rennix later presented to the Trustee during discovery.  Further, the letterhead on the contract Mr. Rennix presented to the Trustee shows an address for Mr. Rennix that he had not yet moved to at the time the contract was purportedly executed.

Again, the Court must stress that Ms. Gobert's experience with Mr. Rennix is not isolated. The Court has seen at least 50 cases with Mr. Rennix involving similar issues.  These issues include the following: debtor payments to Mr. Rennix undisclosed to the Court, signatory irregularities on debtor's schedules filed by Mr. Rennix, no trust accounting and/or the lack of a client trust account by Mr. Rennix, a lack of communication with clients by Mr. Rennix, unnecessary delays by Mr. Rennix in providing legal services to his clients.  Finally, this Court previously ordered Mr. Rennix disgorge to Ms. Gobert $1,500.00.  He was order to disgorge the funds no later than September 9, 2016 (Case No. 16-11147, ECF No. 9).  However, as of September 26, 2016, he had failed to disgorge any funds.

---

[5] A "skeleton petition" refers to the filing of only those documents required to initiate a bankruptcy (e.g., the voluntary petition, etc.), while not initially filing other required documents such as the bankruptcy schedules.

*Helen Marie White, 15-12283*

In the White case, the Court held a preliminary show cause hearing on July 28, 2016, and a final show cause hearing on September 26, 2016.  Ms. White testified at both hearings.  The Court finds her to be a credible witness.  At the first hearing, the Court ordered Mr. Rennix to produce documents with "wet" (original) signatures for both the White and the Parker case.  *See* Case No. 15-12283, ECF No. 54, pg. 90 of 95, lines 11-16.  However, Mr. Rennix has never produced such documents for these or any other client.  Therefore, the Court finds Mr. Rennix does not maintain "wet" or original signatures of any of the documents he files electronically.  This finding is supported by Mr. Rennix's failure to produce documents with "wet" (original) signatures in the White case or any other case.  This leads the Court to conclude that Mr. Rennix's long term practice was to manipulate his client's electronic signatures such that he routinely electronically signed documents without his clients' permission.[6]

Ms. White paid Mr. Rennix a total of $1,331.00.  This total includes a payment of $331.00 on July 16, 2014, a payment of $500.00 on September 21, 2015, and a final payment of $500.00 on December 8, 2015.  However, Mr. Rennix never disclosed these payments to the Court and he continually filed disclosures showing Ms. White had not paid him anything.  *See* Case No. 15-12283, Trustee Ex. 1, ECF No. 64-1, pg. 27 of 33, part 9; Case No. 15-12283, Trustee Ex. 3, ECF No. 64-2, pg. 4 of 46; Case No. 15-12283, Trustee Ex. 17, ECF No. 64-8, pg. 49 of 61, part 7, question 16.  In Ms. White's second bankruptcy filing, Mr. Rennix filed an Application to Pay Filing Fee in Installments (Case No. 15-12283, Trustee Ex. 18, ECF No. 64-9) even though Ms. White had already paid him the full filing fee.  Additionally, that application is purportedly signed by Ms. White, but the Court finds that she did not sign it.  The Court makes this finding as Ms.

---

[6] The Court does note that Mr. Rennix did recently file a few documents containing his clients' actual scanned signature, but only after the Court suspended him from his electronic filing privileges.

White testified and that she never signed it, and because the Court finds this was Mr. Rennix's ongoing practice as it has already described.

The Chapter 13 Trustee demonstrated Mr. Rennix's ongoing scheme by identifying 17 additional bankruptcy cases with the same or a similar fact patterns.  Case No. 15-12283, Trustee Ex. 20 to 36.  In each case, the Trustee identified a payment made from the client to Mr. Rennix for the payment of the bankruptcy filing fee.  In each case, Mr. Rennix either failed to pay the filing fee and the case was dismissed or he filed an application to pay the filing fee in installments. He filed these applications even though his client had already paid the filing fee.  The Court finds that in each of these instances, Mr. Rennix forged the debtor's electronic signature.[7]  His clients did not sign these documents; instead, Mr. Rennix fraudulently affixed his client's electronic signatures to these applications.  In most of the cases, Mr. Rennix also failed to disclose that he had ever received any payment from the debtor.[8]

Ms. White testified that Mr. Rennix habitually did not respond to her questions and requests.  She sent an email to him on January 12, 2016, which said the following: "[y]our continued lack of professionalism and courteous service has not only created a worse financial situation for me but has also begun to affect my physical well being with stressful worrying and fear of losing everything."  Case No. 15-12283, Trustee Ex. 39, ECF No. 64-13, pg. 25 of 62.  Ms. White frequently emailed Mr. Rennix and consistently received no response.  Case No. 15-12283, Trustee Ex. 39, ECF No. 64-13, pgs. 25-30.  Ms. White also called Mr. Rennix, which she followed

---

[7] In one instance, there is a scanned client signature on an application to pay filing fee in installments.  It seems illogical that a client would sign such a document when after already paying the filing fee to Mr. Rennix.. However, this application was filed after the Court suspended Mr. Rennix's electronic filing privileges.
[8] The Court notes that Mr. Rennix did disclose his client's payment of the filing fee in 3 of the 17 cases. However, even though he disclosed the payment, he still fraudulently filed an application to pay the filing fee in installments.

up with verification emails.  These calls and emails all concerned work Mr. Rennix was obligated to perform for his client.  This included numerous actions Mr. Rennix should have taken including filing a motion to approve a home loan modification, writing a letter of consent giving the mortgage company permission to speak to the debtor, and filing the necessary motions to address insurance proceeds for a vehicle destroyed by flood.  Case No. 15-12283, Trustee Ex. 39, ECF No. 64-13, pg. 27 of 62.  Mr. Rennix took no action on these requests.  First, he failed to take any action concerning an $11,633.67 check (Case No. 15-12283, Trustee Ex. 41, ECF No. 50 of 62). That check represents insurance proceeds for the debtor's flooded vehicle that was declared a total loss.  As a result of Mr. Rennix's inaction, these insurance funds have still not been addressed and have not been distributed by the Chapter 13 Trustee.  Second, Mr. Rennix took no action on a proposed home loan modification offered by the debtor's mortgage company.  Case No. 15-12283, Trustee Ex. 44, ECF No. 64-14, pgs. 1-6.  The proposed modification had a deadline of February 1, 2016.  Mr. Rennix never took action and the proposed modification expired.  This modification would have been beneficial for the debtor, and the Court likely would have approved it.  However, the mortgage company will no longer accept the proposed mortgage modification they originally offered.  Mr. Rennix's lack of action in this case constitutes negligence, and is below the required standard of care.  His behavior was unprofessional and unethical.  Additionally, and importantly, the Court finds Mr. Rennix's representation of Ms. White is indicative of his poor representation of many other clients who have appeared before this Court, including those discussed elsewhere in this memorandum order.

### III. Conclusions of Law

The Court has jurisdiction pursuant to 28 USC U.S.C. § 1334(b). This particular dispute is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because it concerns matters concerning

administration of the estate.  Additionally, this particular dispute is a core proceeding pursuant to the general "catch-all" language of 28 U.S.C. 157(b)(2).

This Court also has broad powers to regulate the attorneys who practice before it.  This Court has the power to police the conduct of the attorneys who appear in this Court and to take action with respect to those attorneys who misbehave. *Chambers v. NASCO*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *Knight v. Luedtke* (*In re Yorkshire, LLC*), 540 F.3d 328, 332 (5th Cir. 2008).  But for the existence of these various debtors' cases, the misconduct described in this opinion would not have occurred. These circumstances make this dispute a core proceeding. Venue is proper pursuant to 28 U.S.C. § 1408(1). *In re Bradley*, 495 B.R. 747, 777 (Bankr. S.D. Tex. 2013).

A bankruptcy court has broad authority to take necessary and appropriate actions to prevent an abuse of process.  However, the use of sanctions must be accompanied by a specific finding of bad faith conduct.  A finding of bad faith must be based on clear and convincing evidence. *Crowe v. Smith*, 151 F.3d 217, 236 (5th Cir. 1998).  To impose sanctions based on bad faith, a court must find that the "very temple of justice" has been defiled by a party's conduct. *In re Stomberg*, 487 B.R. 775, 817-18 (Bankr. S.D. Tex. 2013) (citing *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999)).  In other words, a party's bad faith may be established if it "deliberately abused the judicial process." *The Cadle Co. v. Moore* (*In re Moore*), 739 F.3d 724, 730 (5th Cir. 2014).

### Billy Ray Parker, 11-10786

The Chapter 13 Trustee's Motion for Sanctions and Contempt (Case No. 11-10786, ECF No. 67) requests the imposition of sanctions and civil contempt based on Mr. Rennix's failure to comply with the Court's August 4, 2016, Order to Compel (Case No. 11-10786, ECF No. 65). Fed. R. Bankr. P. 7037 and Fed. R. Civ. P. 37(b)(2)(A)(vii) provide that a violation of a discovery

order may be treated as contempt of court.  A finding of civil contempt requires only a showing "(1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order."  *F.D.LC. v LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995).  A civil contempt sanction may serve to "coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation."  *In re Wheeler*, 596 Fed. Appxs. 323, 325-326 (5th Cir. 2015).  Here, the Court's order dated August 4, 2016, was in effect.  That order required Mr. Rennix to take certain actions, including the production of documents.  Case No. 11-10786, ECF No. 65.  Mr. Rennix did not comply with the Court's order.  Further, Mr. Rennix did not object to or respond to the Trustee's motion, even though the motion clearly set forth a deadline for a response.  The Court finds Mr. Rennix's lack of response to be an admission to all allegations the Trustee made in her motion.  Therefore, the Chapter 13 Trustee's Motion for Sanctions and for Contempt (Case No. 11-10786, ECF No. 67) is granted.

Fed. R. Bankr. P. 7037 and Fed. R. Civ. P. 37(b)(2)(A) provide for sanctions in the event of a party's  failure to comply with a court order requiring discovery, including allowing "designated facts [to]  be taken as established ...." and "treating as contempt of court the failure to obey...."  Moreover, these rules also state that the court may order the following actions:

> (i)  directing that matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii)  striking pleadings in whole or in part;
> (iv)  staying further proceedings until the order is obeyed;
> (v)  dismissing the action or proceeding in whole or in part;
> (vi)  rendering a default judgment against the disobedient party; or
> (vii)  treating as contempt of com1the failure to obey any order except an order to submit to a mental or physical examination.

26

In the Parker case, the Court ordered Mr. Rennix to produce to the Trustee numerous financial documents related to a possible theft of estate funds.  The deadline for producing these documents was August 2, 2016.  Mr. Rennix's production was significantly incomplete. Therefore, Mr. Rennix's violation of the Court's order to compel is clear.  Regardless, the Court has already held that the clear and convincing evidence is that Mr. Rennix misappropriated estate funds for his personal use.

Fed. R. Civ. P. 37(b)(2)(A)(i) allows particular facts involved in a violated discovery order to be "taken as established."  The Court holds Mr. Rennix is responsible for the theft of estate funds based on his failure to produce documents.  Accordingly, Mr. Rennix is **ORDERED** to disgorge the sum of $12,225.29[9] to the Chapter 13 Trustee within 14 days of the entry of this order.

The Court also finds Mr. Rennix has violated the following provisions of the  Louisiana Rules of Professional Conduct:

Rule 1.15 Safekeeping Property

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Except as provided in (g) and the IOLTA Rules below, funds shall be kept in one or more separate interest-bearing client trust accounts maintained in a bank or savings and loan association: 1) authorized by federal or state law to do business in Louisiana, the deposits of which are insured by an agency of the federal government; 2) in the state where the lawyer's primary office is situated, if not within Louisiana; or 3) elsewhere with the consent of the client or third person. No earnings on a client trust account may be made available to or utilized by a lawyer or law firm. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account or obtaining a waiver of those charges, but only in an amount necessary for that purpose.
(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses

---

[9] The Court recognizes that this includes the sum of $500.00 payable to Mr. Rennix for attorney fees he would have incurred in having the Application to Approve Compromise (Case No. 11-10786, ECF No. 44) approved.  The Court includes this $500.00 in the sanction award.

incurred. The lawyer shall deposit legal fees and expenses into the client trust account consistent with Rule 1.5(f).

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. For purposes of this rule, the third person's interest shall be one of which the lawyer has actual knowledge, and shall be limited to a statutory lien or privilege, a final judgment addressing disposition of those funds or property, or a written agreement by the client or the lawyer on behalf of the client guaranteeing payment out of those funds or property. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(e) When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

(f) Every check, draft, electronic transfer, or other withdrawal instrument or authorization from a client trust account shall be personally signed by a lawyer or, in the case of electronic, telephone, or wire transfer, from a client trust account, directed by a lawyer or, in the case of a law firm, one or more lawyers authorized by the law firm. A lawyer shall not use any debit card or automated teller machine card to withdraw funds from a client trust account. On client trust accounts, cash withdrawals and checks made payable to "Cash" are prohibited. A lawyer shall subject all client trust accounts to a reconciliation process at least quarterly, and shall maintain records of the reconciliation as mandated by this rule.

(g) A lawyer shall create and maintain an "IOLTA Account," which is a pooled interest-bearing client trust account for funds of clients or third persons which are nominal in amount or to be held for such a short period of time that the funds would not be expected to earn income for the client or third person in excess of the costs incurred to secure such income.

(1) IOLTA Accounts shall be of a type approved and authorized by the Louisiana Bar Foundation and maintained only in "eligible" financial institutions, as approved and certified by the Louisiana Bar Foundation. The Louisiana Bar Foundation shall establish regulations, subject to approval by the Supreme Court of Louisiana, governing the determination that a financial institution is eligible to hold IOLTA Accounts and shall at least annually publish a list of LBF-approved/certified eligible financial institutions. Participation in the IOLTA program is voluntary for financial institutions.

IOLTA Accounts shall be established at a bank or savings and loan association authorized by federal or state law to do business in Louisiana, the deposits of which are insured by an agency of the federal government or at an open-end investment company registered with the Securities and Exchange Commission authorized by federal or state law to do business in Louisiana which shall be invested solely in or fully collateralized by U.S. Government Securities with total assets of at least $250,000,000 and in order for a financial institution to be approved and certified by the Louisiana Bar Foundation as eligible, shall comply with the following provisions:

(A) No earnings from such an account shall be made available to a lawyer or law firm.

28

(B) Such account shall include all funds of clients or third persons which are nominal in amount or to be held for such a short period of time the funds would not be expected to earn income for the client or third person in excess of the costs incurred to secure such income.

(C) Funds in each interest-bearing client trust account shall be subject to withdrawal upon request and without delay, except as permitted by law.

(2) To be approved and certified by the Louisiana Bar Foundation as eligible, financial institutions shall maintain IOLTA Accounts which pay an interest rate comparable to the highest interest rate or dividend generally available from the institution to its non-IOLTA customers when IOLTA Accounts meet or exceed the same minimum balance or other eligibility qualifications, if any. In determining the highest interest rate or dividend generally available from the institution to its non-IOLTA accounts, eligible institutions may consider factors, in addition to the IOLTA Account balance, customarily considered by the institution when setting interest rates or dividends for its customers, provided that such factors do not discriminate between IOLTA Accounts and accounts of non-IOLTA customers, and that these factors do not include that the account is an IOLTA Account. The eligible institution shall calculate interest and dividends in accordance with its standard practice for non-IOLTA customers, but the eligible institution may elect to pay a higher interest or dividend rate on IOLTA Accounts.

(3) To be approved and certified by the Louisiana Bar Foundation as eligible, a financial institution may achieve rate comparability required in (g)(2) by:

(A) Establishing the IOLTA Account as: (1) an interest-bearing checking account; (2) a money market deposit account with or tied to checking; (3) a sweep account which is a money market fund or daily (overnight) financial institution repurchase agreement invested solely in or fully collateralized by U.S. Government Securities; or (4) an open-end money market fund solely invested in or fully collateralized by U.S. Government Securities. A daily financial institution repurchase agreement may be established only with an eligible institution that is "well-capitalized" or "adequately capitalized" as those terms are defined by applicable federal statutes and regulations. An open-end money market fund must be invested solely in U.S. Government Securities or repurchase agreements fully collateralized by U.S. Government Securities, must hold itself out as a "money-market fund" as that term is defined by federal statutes and regulations under the Investment Company Act of 1940 and, at the time of the investment, must have total assets of at least $250,000,000. "U.S. Government Securities" refers to U.S. Treasury obligations and obligations issued or guaranteed as to principal and interest by the United States or any agency or instrumentality thereof.

(B) Paying the comparable rate on the IOLTA checking account in lieu of establishing the IOLTA Account as the higher rate product; or

(C) Paying a "benchmark" amount of qualifying funds equal to 60% of the Federal Fund Target Rate as of the first business day of the quarter or other IOLTA remitting period; no fees may be deducted from this amount which is deemed already to be net of "allowable reasonable fees."

(4) Lawyers or law firms depositing the funds of clients or third persons in an IOLTA Account shall direct the depository institution:

(A) To remit interest or dividends, net of any allowable reasonable fees on the average monthly balance in the account, or as otherwise computed in accordance with an eligible

institution's standard accounting practice, at least quarterly, to the Louisiana Bar Foundation, Inc.;

(B) to transmit with each remittance to the Foundation, a statement, on a form approved by the LBF, showing the name of the lawyer or law firm for whom the remittance is sent and for each account: the rate of interest or dividend applied; the amount of interest or dividends earned; the types of fees deducted, if any; and the average account balance for each account for each month of the period in which the report is made; and

(C) to transmit to the depositing lawyer or law firm a report in accordance with normal procedures for reporting to its depositors.

(5) "Allowable reasonable fees" for IOLTA Accounts are: per check charges; per deposit charges; a fee in lieu of minimum balance; sweep fees and a reasonable IOLTA Account administrative fee. All other fees are the responsibility of, and may be charged to, the lawyer or law firm maintaining the IOLTA Account. Fees or service charges that are not "allowable reasonable fees" include, but are not limited to: the cost of check printing; deposit stamps; NSF charges; collection charges; wire transfers; and fees for cash management. Fees or charges in excess of the earnings accrued on the account for any month or quarter shall not be taken from earnings accrued on other IOLTA Accounts or from the principal of the account. Eligible financial institutions may elect to waive any or all fees on IOLTA Accounts.

(6) A lawyer is not required independently to determine whether an interest rate is comparable to the highest rate or dividend generally available and shall be in presumptive compliance with Rule 1.15(g) by maintaining a client trust account of the type approved and authorized by the Louisiana Bar Foundation at an "eligible" financial institution.

(7) "Unidentified Funds" are funds on deposit in an IOLTA account for at least one year that after reasonable due diligence cannot be documented as belonging to a client, a third person, or the lawyer or law firm.

(h) A lawyer who learns of Unidentified Funds in an IOLTA account must remit the funds to the Louisiana Bar Foundation. No charge of misconduct shall attend to a lawyer's exercise of reasonable judgment under this paragraph (h). A lawyer who either remits funds in error or later ascertains the ownership of remitted funds may make a claim to the Louisiana Bar Foundation, which after verification of the claim will return the funds to the lawyer.

Mr. Rennix has committed numerous serious violations of Louisiana Rule of Professional Conduct 1.15. The Court finds Mr. Rennix has deliberately abused the judicial process. By depositing misappropriated estate funds into his personal bank account, Mr. Rennix has clearly violated Louisiana Rule of Professional Conduct 1.15. That check, which was discussed earlier, was for $12,225.29 and should have been deposited into Mr. Rennix's client trust account. He should have then disbursed the funds out of his trust account to the appropriate recipients. According to the Louisiana Rule of Professional Conduct 1.15, a lawyer shall hold property of clients or third

30

persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.  Mr. Rennix clearly violated this rule.  Further, client or third party funds shall be kept in one or more separate interest-bearing client trust accounts maintained in a bank or savings and loan association.  Mr. Rennix violated this provision of Rule 1.15 by depositing the aforementioned check into his personal account.  Additionally, the Court finds that as of May 22, 2013, which was the date he deposited the check, Mr. Rennix was not actively using a trust account.  Further, as of September of 2013, Mr. Rennix did not even maintain a trust account, which is itself a violation of Rule 1.15.  Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person.  Mr. Rennix violated this provision of Rule 1.15, and the Court finds that Mr. Rennix gave no notice as required by the Rule.

Rule 3.3 requires the following concerning candor to a tribunal:

(a) A lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.

On June 15, 2016, Mr. Rennix made the following statements at a hearing, which the Court finds were false and misleading.

THE COURT: And the check looks like it was endorsed by you. And it doesn't show where it was deposited.
MR. RENNIX: No, sir. And at that point, my notes from my file show that it was endorsed as it is to be mailed to the Trustee.
THE COURT: So where did it go?
MR. RENNIX: That's our -- what we don't know. But what I do know is that it went through my office and eventually it did -- well, my understanding -- I suspect and highly suspect that Ms. Cabrera had something to do with it.
THE COURT: Do you think she may have stolen the money from you?
MR. RENNIX: Yes, sir. And -- well, let me tell what you I think -- well, that's what I think. And let me tell you kind of where I think we can go from here, is that we're looking for her. And in fact my paralegals -- both her brothers are police officers –

The Court does note that Mr. Rennix was not under oath when he made these statements; otherwise, these statements would clearly constitute perjury.  Ms. Cabrera did not steal the endorsed check from Mr. Rennix.  As already discussed, the Court finds Mr. Rennix deposited the check into his personal account and misappropriated these funds to his personal use.

This Court does not have criminal jurisdiction.  However, it is possible Mr. Rennix has committed a bankruptcy crime.  18 U.S.C. § 152(1) provides criminal penalties for a person who "knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States trustee, any property belonging to the estate of a debtor."   The Court notes that the Chapter 13 Trustee is an officer of the court charged with the control or custody of property belonging to the estate of a debtor.  The pre-petition cause of action held by the debtor, from which the settlement funds were derived, is property of the estate pursuant to 11 U.S.C. § 541.  The commencement of a bankruptcy case under § 541 creates an estate of all legal or equitable interests of the debtor in property as of the commencement of the case.  It appears Mr. Rennix knowingly and fraudulently concealed estate funds from the Chapter 13 Trustee. Accordingly this matter is referred to Stephanie A. Finley, United States Attorney for the Western District of Louisiana, U.S. Attorney's Office, 800 Lafayette Street, Suite 2200, Lafayette, Louisiana 70501-6832.  Additionally, this matter is referred to the Disciplinary Counsel of the State Bar of Louisiana, 4000 S. Sherwood Forest Blvd. Suite 607, Baton Rouge, Louisiana 70816 and the State Bar of Georgia, 104 Marietta St. N. W. Suite 100, Attn: CAPS, Atlanta, Georgia 30303.  The Clerk of the Bankruptcy Court is **ORDERED** to mail copies of this opinion by regular and certified mail to these parties.

*Karen W. Gobert, 16-11147*

Karen W. Gobert's Chapter 7 bankruptcy case was filed on July 8, 2016, and Mr. Rennix was the attorney of record.  Ms. Gobert's case was one of 24 cases Mr. Rennix filed during the period of time he was ineligible to practice law.  Accordingly, he lacked authority to file Ms. Gobert's case.  Therefore, on August 26, 2016, the Court entered an order requiring Mr. Rennix to disgorge $1,500.00 in fees to Ms. Gobert within 14 days and file proof of such disgorgement (Case No. 16-11147, ECF No. 9).  The Court set a status hearing for September 26, 2016, in order to determine whether Mr. Rennix had complied with the order.  Mr. Rennix did not disgorge those fees within 14 days.  At the status hearing on September 26, 2016, the Court became aware of Mr. Rennix's delay in filing Ms. Gobert's case, as discussed in detail in this opinion.

Mr. Rennix's conduct in the Gobert case violate several provisions of the Louisiana Rules of Professional Conduct.

Rule 5.5(b)(2) of the Louisiana Rules of Professional Conduct provides:

(b) A lawyer who is not admitted to practice in this jurisdiction shall not:
(2)  hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

Mr. Rennix failed to give any notice of his ineligibility to practice law to this Court, the Chapter 13 Trustee or his client.  This court has previously held that Mr. Rennix's failure to disclose his license suspension was intentional.

Rule 1.15 Safekeeping Property of the Louisiana Rules of Professional Conduct provides the following:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.

Ms. Gobert paid Mr. Rennix a retainer of $1,500.00 on September 28, 2015.  This Court has already held that Mr. Rennix did not have a client trust account at that time, and he waited more than nine months to file Ms. Gobert's bankruptcy case.  The funds paid by Ms. Gobert should have been deposited into a client trust account and paid out only as the fees were earned or expenses incurred.  This is required pursuant to subsection (c) of Rule 1.15, which provides the following: "[a] lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred. The lawyer shall deposit legal fees and expenses into the client trust account consistent with Rule 1.5(f)."  Mr. Rennix deposited the funds into a non-trust account, which is a violation of Rule 1.5.

Rule 3.3(a)(1) of the Louisiana Rules of Professional Conduct provides the following:

(a) A lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

As already discussed, Ms. Gobert's credit counseling certificate that she obtained on October 14, 2015, had expired.   Realizing this, Mr. Rennix fraudulently generated a new credit counseling certificate for the Ms. Gobert dated July 8, 2016.  He then filed this fraudulent certificate of credit counseling.  This clearly violates Rule 3.3(a)(1).

Finally, Mr. Rennix's lack of communication with his client and the extreme nine month delay in filing Mr. Gobert's Chapter 7 petition violates Rules 1.3 and 1.4 of the Louisiana Rules of Professional Conduct.  Rule 1.3 provides the following: "[a] lawyer shall act with reasonable diligence and promptness in representing a client."  Mr. Rennix has failed in this regard as he was neither reasonably diligent nor prompt in his representation of Ms. Gobert.  Rule 1.4(a)(3) provides that a lawyer shall keep the client reasonably informed about the status of the matter and promptly comply with reasonable requests for information.  The Court finds Mr. Rennix's conduct falls well

34

below these standards.  The Court finds by clear and convincing evidence that Mr. Rennix failed to keep Ms. Gobert reasonably informed about the status of her case, and that he never promptly complied with any of her reasonable requests for information about her case.

### Helen Marie White, 15-12283

In the White case, the Court issued a show cause hearing, to be held July 28, 2016, to determine whether the court should impose sanctions for his conduct in the case (Case No. 15-12283, ECF No. 44).  All of Mr. Rennix's ongoing ethical failings are clearly evident in the White case.  These failings include the following: his failure to disclose to the Court payments he received from his client, the filing of an improper attorney fee disclosure, forgery of the debtor's signature on an application to pay filing fee in installments as well as the improper filing thereof, negligence, and a total lack of responsiveness to his client.  This Court can only conclude that Mr. Rennix's actions violate Rules 1.3 and 1.4 of the Louisiana Rules of Professional Conduct.  Mr. Rennix did not act with reasonable diligence and promptness in representing Ms. White.  Additionally, he failed to keep Ms. White reasonably informed about the status of her case and never promptly complied with reasonable requests for information.  By clear and convincing evidence, the Court finds that Mr. Rennix's conduct falls well below the required standards.

### IV. Sanction Order

On August 1, 2016, this Court entered an interim order (Case, No. 15-12283, ECF No. 52), which stated that Mr. Rennix had violated Administrative Rule VIII(D)(2) and that Mr. Rennix must thereafter file scanned copies of documents with "wet" signatures (instead of electronic signatures).  The Court ordered the Clerk of Court to strike any document that was not in compliance.  That order was subject to a final hearing, which was held on September 26, 2016.

Given the overwhelming evidence of signature manipulation and forgery committed by Mr. Rennix, it is hereby **ORDERED** that the restrictions contained in that interim order are now made permanent.

Accordingly, **IT IS ORDERED** that attorney Michael B. Rennix may not file any documents with any electronic signatures in the Western District of Louisiana.

**IT IS FURTHER ORDERED** that the Clerk of Court for the U.S. Bankruptcy Court for the Western District of Louisiana shall strike any document filed by attorney Michael B. Rennix, which contains electronic signatures.

The Court also finds no value in the legal services provided by Mr. Rennix to Ms. White. Accordingly **IT IS ORDERED** that Mr. Rennix disgorge to the Chapter 13 Trustee for Ms. White's benefit the sum of $1,331.00 within 14 days of the date of the entry of this order.

Still further, in *In re Petyon* (Case No. 16-10186), this Court suspended Mr. Rennix from the practice of law for 76 days (Case No. 16-10186, ECF No. 46).  Mr. Rennix's suspension ends on November 8, 2016.  Therefore, **IT IS ORDERED** that, pursuant to Local Civil Rule LR83.2.10, attorney Michael B. Rennix is suspended from the practice of law in the Western District of Louisiana for an additional 90 days effective immediately and ending on February 6, 2017.  This is the maximum period this Court is authorized to suspend an attorney from the practice of law in the Western District of Louisiana.

### V. Referral for Attorney Discipline to the District Court

The Court refers attorney Michael Rennix to Chief United States District Court Judge Dee D. Drell for initiation of attorney discipline proceedings pursuant to LR83.2.10.  This Court has serious concerns regarding Mr. Rennix's conduct and professionalism in numerous bankruptcy

cases.  This Court finds Mr. Rennix has consistently violated the Louisiana Rules of Professional Conduct, and believes additional attorney discipline is appropriate.

Specifically, this Court has found Mr. Rennix misappropriated estate funds totaling $11,725.29 and converted them to his personal use.  He has routinely failed to disclose payments received from clients as required by the Bankruptcy Code and Bankruptcy Rules.  He has forged documents.  He has fraudulently filed documents containing his clients' electronic signature without authorization.  He has consistently failed maintain client trust accounting, or to even use a client trust account.  He routinely fails to communicate with his clients.  He has often been delinquent in completing work, including missing important deadlines, which has been extremely detrimental to his clients.  His lack of responses and failure to take action potentially constitutes legal malpractice.  He has also failed to abide by this Court's discovery orders and continues to be in violation of these orders.

In *Dignity Health v. Seare* (*In re Seare*), 493 B.R. 158, 181 (Bankr. D. Nev. 2013), one bankruptcy court made the following observations, which are appropriate in this case:

> A profession such as law is different from other occupations in that (1) "its practice requires substantial intellectual training and the use of complex judgments;" (2) it places clients in a position of trust because they typically cannot evaluate the quality of service; and (3) "the client's trust presupposes that the practitioner's self-interest is overbalanced by devotion to serving both the client's interest and the public good. These traits justify the special privileges that lawyers, as members of a profession, enjoy; among the most noteworthy are a monopoly on representing others in court, and the enhanced ability to earn a livelihood that such a monopoly provides.
>
> The duties that a lawyer owes her client also flow from this understanding of what it means to be a "professional" — that a lawyer's superior knowledge and training place clients in a position of trust and dependence such that the lawyer has obligations to individual clients beyond that of two equal parties to a transaction or contract. Instead, a lawyer is a fiduciary that owes the duties of candor, good faith, trust, and care to a client.
>
> The view of attorneys as professionals with enhanced duties to clients is not new or novel, as many courts have noted. "Attorneys must never lose sight of the fact that the profession is a branch of the administration of justice and not a mere

37

money-making trade.

Mr. Rennix's conduct is below the standard of care this Court requires for lawyers that appear before it.  This is especially true in this Court, which deals primarily with consumer bankruptcy debtors who are often economically challenged, undereducated, and unsophisticated. It is the Court's opinion that Mr. Rennix has repeatedly violated the Louisiana Rules of Professional Conduct.

For these reasons, this Court makes a referral for attorney discipline for Michael B. Rennix. The Clerk of the Bankruptcy Court is **ORDERED** to provide notice of this Memorandum Order and Referral for Attorney Discipline to Chief United States District Court Judge Dee D. Drell.

###

# Notice Recipients

District/Off: 0536–5                    User: jeaton                    Date Created: 10/5/2016
Case: 11–10786                          Form ID: pdf8                   Total: 9

**Recipients of Notice of Electronic Filing:**
ust        Office of U. S. Trustee           USTPRegion05.SH.ECF@usdoj.gov
tr         Todd Johns (Ch 13 Trustee)        ecf@shrevech13.com
aty        Frances Ellen Hewitt              frances.hewitt@usdoj.gov
aty        Ralph Scott Bowie, Jr.            rsbowie@bellsouth.net
aty        Richard Drew        richard.drew@usdoj.gov

TOTAL: 5

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db         Billy Ray Parker        7287 Deer Trail        Shreveport, LA 71107
           Stephanie A. Finley        U.S. Attorneys Office        800 Lafayette Street, Suite 2200        Lafayette, Louisiana 70501–6832
           Disciplinary Counsel        State Bar of Louisiana        4000 S. Sherwood Forest Blvd. Suite 607        Baton Rouge, Louisiana 70816
           Disciplinary Counsel        State Bar of Georgia        104 Marietta St. N. W. Suite 100        Attn: CAPS        Atlanta, Georgia 30303

TOTAL: 4